## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **INVISTA NORTH AMERICA S.à.r.l.,**   ) | |
| ) | |
| **Plaintiff,**   ) | |
| ) | |
| **v.**   ) | **Civil Action No. 06-2180 (RCL)** |
| ) | |
| **RHODIA POLYAMIDE**   ) | |
| **INTERMEDIATES S.A.S.,**   ) | |
| ) | |
| **Defendant.**   ) | |
| ) | |

## MEMORANDUM OPINION

### I.    INTRODUCTION

This matter comes before the Court on defendant Rhodia Polyamide Intermediates S.A.S.'s ("Rhodia PI") motion [8] to compel arbitration.  Upon consideration of Rhodia PI's motion, plaintiff INVISTA North America S.à.r.l.'s ("INVISTA NA") opposition [13] thereto, Rhodia PI's reply [14], INVISTA NA's sur-reply [16], the applicable law, and the record herein, the Court will grant Rhodia PI's motion [8] to compel arbitration.

### II.    BACKGROUND

In 1998, E.I. DuPont de Nemours and Co. ("DuPont") entered into a licensing agreement with Butachimie, a joint venture between DuPont and Rhodianyl, regarding advanced technology ("Gen III technology") used in the production of nylon fiber.  (Pl.'s Comp. ¶ 13.)  As part of the licensing agreement, the two parties entered into a Confidentiality Agreement to prohibit various Rhodia Group entities, including Rhodianyl, from disclosing or using confidential Gen III technology for their own purposes.  (Def.'s Mot. to Compel Ex. 1. ¶ 2.1.)  In addition, the

1

Confidentiality Agreement prohibits Rhodia Group signatories from using any confidential information regarding Gen III technology in a patent application absent limited exceptions. (*Id.* ¶ 3.2.) If any confidential information is used by a Rhodia Group signatory, the patent application must be assigned to DuPont, the inventor of the Gen III technology. (*Id.*) Furthermore, in the Confidentiality Agreement the parties agreed to settle any dispute arising out of the agreement through arbitration. (*Id.* ¶ 5.1.)

Following the execution of the Confidentiality Agreement, DuPont scientists gave a series of presentations to scientists of Rhodianyl and other Rhodia Group entities, including Rhodia PI. (Pl.'s Comp. ¶¶ 14-16.) These presentations contained confidential information regarding the Gen III process. (*See id.*) After evaluating the technology, Rhodianyl did not implement the Gen III technology at Butachimie. (Pl.'s Opp'n to Def.'s Mot. to Compel [hereinafter Pl.'s Opp'n] at 4.)

In 2004, DuPont assigned its rights in the Confidentiality Agreement to INVISTA NA. (Def.'s Mot. to Compel, Ex. 2 ¶ 9.) In 2005, INVISTA NA discovered that Rhodia PI, a subsidiary of Rhodianyl that is not a signatory to the Confidentiality Agreement, applied for U.S. Patent No. 7,084,293 ("the '293 Patent") and other related patents that allegedly contain confidential Gen III technology. (Pl.'s Opp'n at 5.) Furthermore, INVISTA NA alleges that the '293 Patent incorrectly names Rhodia PI employees as the inventors of the Gen III technology in place of the DuPont scientists who developed this technology. (Pl.'s Comp. ¶ 4.) INVISTA NA and Rhodia PI attempted to resolve the dispute concerning the inventorship of the '293 Patent and the ownership of the related patents without judicial intervention for over a year. (Pl.'s Opp'n at 5.) Ultimately, however, the negotiations failed, and INVISTA NA filed this suit

seeking a court order, pursuant to 35 U.S.C. § 256 ("Section 256"),[1] replacing the names of the

inventors on the '293 Patent with the names of the DuPont scientists who allegedly developed

the technology contained in the '293 Patent.  (Pl.'s Comp. ¶¶ 34-40.)  INVISTA NA also seeks to

enjoin Rhodia PI from including any confidential information relating to the Gen III technology

in other patent applications.  (*Id.* ¶ 44.)  Moreover, INVISTA NA asks the Court to place the

'293 Patent in a constructive trust along with any other patents which contain INVISTA NA's

confidential information.  (*Id.* ¶¶ 45-47.)

     In addition to the present suit, INVISTA NA initiated arbitration against Rhodianyl and

Rhodia PI for including confidential information regarding the Gen III technology in the patent

applications held by Rhodia PI.  (*See* Def.'s Mot. to Compel Ex. 2.)  INVISTA NA requests the

arbitral tribunal to declare that Rhodia PI breached the confidentiality agreement when it filed the

patents and to order Rhodia PI to assign the '293 and related patents to INVISTA NA.  (*Id.* ¶ 45.)

INVISTA NA also seeks to enjoin Rhodia PI from disclosing or using any further confidential

information protected by the Confidentiality Agreement.  (*Id.*)

     Rhodia PI has also initiated arbitration against INVISTA NA.  (*See* Def.'s Mot. to

Compel Ex. 3.)  Rhodia PI asks the arbitral tribunal to declare that the disputed patent

applications do not contain any confidential information protected by the Confidentiality

Agreement.  (*Id.* ¶ 30.)

---

[1] Section 256 provides that upon discovering that inventorship of a patent is in error, "[t]he court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly." 35 U.S.C. § 256 (2006).

Rhodia PI now moves this Court to compel INVISTA NA to pursue the claims in its complaint in the pending arbitration proceedings pursuant to 9 U.S.C. § 4 because INVISTA NA's claims are within the scope of the arbitration agreement and because the relief sought is nearly identical to the relief sought in arbitration. (Def.'s Mot. to Compel at 1.) In the alternative, Rhodia PI asks this Court to stay the proceedings pursuant to 9 U.S.C. § 3 until the arbitral tribunal enters a final award. (*Id.*) In addition, if the Court grants Rhodia PI's motion to compel arbitration, INVISTA NA requests the Court to stay these proceedings until after the pending arbitration is resolved. (Pl.'s Opp'n at 28.)

## III.    LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that "a written provision in . . . a contract to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable save upon any grounds as exist at law or in equity for revocation of any contract." 9 U.S.C. § 2; *Stromberg Sheet Metal Works, Inc. v. Washington Gas Energy Systems, Inc.*, 448 F. Supp. 2d 64, 67 (D.D.C. 2006). The FAA creates a strong presumption in favor of arbitration. *See Moses. H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). Accordingly, courts should resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration." *Id*. Parties, however, cannot be forced into arbitration without an agreement to do so, and the authority of arbitrators to resolve disputes arises out of an agreement between the parties to engage in arbitration. *See AT&T Techs. Inc. v. Commc'ns Workers of America*, 475 U.S. 643, 650 (1986); *Stromberg*, 448 F. Supp. 2d at 67. Thus, "[b]ecause arbitration provisions are in essence a matter of contract between the parties, it is for the courts to decide whether the parties are bound by a given arbitration clause." *Stromberg*, 448

4

F. Supp. 2d at 67 (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).

Section 4 and Section 206 of the FAA grant district courts the authority to compel arbitration, provided that a valid and enforceable arbitration agreement exists. *See* 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.") ; 9 U.S.C. § 206 ("A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States.").

When a party moves the court to compel arbitration, the court must make a two-part inquiry. *Stromberg*, 448 F. Supp. 2d at 68. First, the court must determine "whether the parties entered into a valid and enforceable arbitration agreement." *Id.* If the party opposing the motion contends that no agreement to arbitrate exists, the standards for resolving a summary judgment motion pursuant to Rule 56 of the Federal Rules of Civil Procedure should be applied. *Booker v. Robert Half Int'l, Inc.*, 315 F. Supp. 2d 94, 99 (D.D.C. 2004). Second, if the parties did execute a valid and enforceable arbitration agreement, the court must determine whether the claims raised in the complaint are within the scope of that agreement. *Stromberg*, 448 F. Supp. 2d at 68. Unless the party opposing the motion to compel arbitration demonstrates that the arbitration clause cannot be interpreted to cover the dispute, the court should order the parties to settle the dispute in arbitration. *See AT&T Techs. Inc.*, 475 U.S. at 650 (stating that a motion to compel arbitration should not be denied absent a showing that the arbitration agreement "is not susceptible of an interpretation that covers the asserted dispute").

5

IV.     **ANALYSIS**

A.     **An Enforceable Arbitration Agreement Exists**

Chapter Two of the FAA codifies the Convention on the Recognition and Enforcement of

Foreign Arbitration Awards ("New York Convention") and governs the enforcement of foreign

arbitration agreements in United States courts. *See* 9 U.S.C. §§ 201-208. An arbitration

agreement is governed by Chapter Two if: "(1) there is a written agreement between the parties

to arbitrate the dispute; (2) the locus of the arbitration is in a country that is a signatory to the NY

Convention; (3) the dispute arises out of a commercial legal relationship; and (4) at least one

party to the arbitration agreement is not an American citizen." *Khan v. Parsons Global Servs.*

*Inv.*, 480 F. Supp. 2d 327, 339 (D.D.C. 2007); *see also* 9 U.S.C. § 202. If the agreement is

within the scope of Chapter Two of the FAA, the court shall compel arbitration pursuant to

Section 206 or Section 4.[2] *See* 9 U.S.C. § 206.

Article 5.1 of the Confidentiality Agreement between Rhodianyl and INVISTA NA is a

foreign arbitration agreement within the meaning of 9 U.S.C. § 202. A written agreement to

arbitrate is in place between Rhodianyl and INVISTA NA. The parties provided for arbitration

in Geneva, Switzerland, and Switzerland is a signatory to the New York Convention. The

arbitration agreement arises out of a commercial legal relationship because it governs disputes

concerning confidential information used in the research and development of industrial

chemicals. Last, at least one party to the Confidentiality Agreement, the French company

---

[2] Section 208 of the FAA provides that Chapter 1 of the FAA also applies to any actions
brought under Chapter 2. Accordingly, the Court's authority to compel arbitration arises from
both Section 4 and Section 206 of the FAA.

Rhodianyl, is not a U.S. citizen. (*See* Def.'s Mot. to Compel Ex. 1.) Accordingly, the Court

finds that a valid and enforceable arbitration agreement, governed by Chapter Two of the FAA,

exists.

Before the Court can compel arbitration, however, the Court must determine "whether the

arbitration agreement is 'null and void, inoperative or incapable of being performed' under

Article II(3) of the NY Convention." *Kahn*, 480 F. Supp. 2d at 339. INVISTA NA argues that

the arbitration agreement is inoperative or incapable of being performed because Rhodia PI is not

a signatory to the arbitration agreement. Thus, the Court must now determine if the agreement is

inoperative or incapable of being performed because Rhodia PI is not a signatory to the

Confidential Agreement.

### B.    The Arbitration Agreement Applies to Rhodia PI

Courts have recognized that a non-signatory to an arbitration agreement may be bound to

that agreement under common law principles of contract and agency law. *See E.I. DuPont*

*Demours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.,* 269 F.3d 187, 195 (3d

Cir. 2001); *Thomson-CSF S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995).

Rhodia PI contends that it is bound to the arbitration agreement by two common law principles,

the doctrines of assumption and equitable estoppel.[3] *See Thomson-CSF*, 64 F.3d at 776 (noting

the recognized common law principles which may bind a non-signatory to an arbitration

agreement, including assumption and equitable estoppel). For the reasons set forth below, the

---

[3] Other recognized common law principles which may bind a non-signatory to an
arbitration agreement include: incorporation by reference, agency, and veil-piercing/alter ego.
*Thomson-CSF*, 64 F.3d at 776.

7

Court finds that Rhodia PI is bound by the arbitration agreement under the doctrine of assumption. The Court, however, lacks the power to compel arbitration on the basis of equitable estoppel pursuant to the FAA.

### 1.     Assumption

"In the absence of a signature, a party may be bound by an arbitration clause if its subsequent conduct indicates that it is assuming the obligation to arbitrate." *Id.* at 777. In this case, Rhodia PI, a non-signatory to the arbitration agreement, has assumed the obligation to resolve the dispute with INVISTA NA through arbitration. Rhodia PI has complied with INVISTA NA's request and demonstrated that it is indeed bound by the Confidentiality Agreement, including the arbitration clause.[4] In a letter to INVISTA NA's counsel, Rhodia PI explicitly stated that:

> [W]e do confirm once again that for all purposes concerning the existing arbitration proceedings (including any consolidation thereof) and the existing U.S. litigation, Rhodia PI is bound by the Confidentiality Agreement in substance, including the arbitration clause. Rhodia PI will not contend to the contrary in the existing arbitration proceedings (or any consolidation thereof) or in the U.S. litigation.

(Pl.'s Opp'n Ex. 7.) This letter, in direct response to INVISTA NA's request, demonstrates in

---

[4] Rhodia PI has also responded to INVISTA NA's additional request to confirm that Rhodia Operations S.A.S. is its legal successor in interest. (Def.'s Reply Ex. 1.) Prior to this litigation, Rhodia PI merged into Rhodia Operations S.A.S., and Rhodia Operations S.A.S. has undertaken all obligations of Rhodia PI. (*Id.*)

writing that Rhodia PI has assumed the obligations of the Confidentiality Agreement, including the arbitration clause. Rhodia PI reiterated this statement again when asked to clarify whether it considered itself bound by the Confidentiality Agreement. (*See* Def.'s Reply Exs. 6-7.) According to the New York Convention, such an exchange of written communication is sufficient to bind the parties to arbitrate. *See* New York Convention Art. II (stating than an agreement to arbitrate must be in writing and that an exchange of letters agreeing to arbitrate a dispute constitutes an agreement in writing). Furthermore, not only does Rhodia PI make these representations to INVISTA NA, but Rhodia PI also undertakes to this Court that it is bound by the Confidentiality Agreement and will not contend otherwise at arbitration. (Def.'s Reply at 6.)

Moreover, Rhodia PI's preparation for arbitration demonstrates that it has assumed the obligation to arbitrate. *See Gvozdenovic v. United Airlines Inc.*, 933 F.2d 1100, 1105 (2d Cir. 1991) (noting that participation in arbitration demonstrates a party's clear intent to arbitrate the dispute even if the party is not a party to the arbitration agreement). Rhodia PI has not challenged the jurisdiction of the arbitral tribunal in the pending arbitration proceedings invoked by INVISTA NA. To the contrary, Rhodia PI has consistently stated that it will not challenge the authority of the tribunal to resolve the dispute between the parties. (Pl.'s Opp'n Ex.7; Def.'s Reply Ex. 7.) Furthermore, Rhodia PI has commenced arbitration pursuant to the arbitration clause in the Confidentiality Agreement against INVISTA S.á.r.l and has appointed the same arbitrator in both pending arbitration proceedings.

Rhodia PI's express statements, together with its actions, demonstrate that Rhodia PI has assumed the obligations of the Confidentiality Agreement, including the arbitration clause. Accordingly, the Court finds that Rhodia PI is bound by the arbitration clause.

9

## 2.    Equitable Estoppel

It is established in this circuit that motions to compel arbitration on the basis of equitable estoppel do not fall within Section 4 of the FAA. *DSMC Inc. v. Convera Corp.*, 349 F.3d 679, 683 (D.C. Cir. 2003). The FAA grants a court the authority to compel arbitration only on the basis of a written agreement, and equitable estoppel only applies if there is not a written contract between the parties. *Id.* Thus, the court in *DSMC Inc.* held that absent a written agreement, a court cannot compel arbitration on the basis of equitable estoppel.[5] *Id.* Rhodia PI correctly demonstrates that other circuits have found that equitable estoppel is a valid basis upon which a court can compel arbitration. *Thomson-CSF*, 64 F.3d at 778; *see also Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524 (5th Cir. 2000) (stating that in limited circumstances a non-signatory to an arbitration agreement can compel arbitration under the theory of equitable estoppel). This Court, however, is bound by the holding in *DSMC Inc.* Accordingly, the Court lacks the authority to compel arbitration pursuant to Section 4 of the FAA under a theory of equitable estoppel.

Rhodia PI also moves the Court to compel arbitration pursuant to Section 206 of the FAA under the theory of equitable estoppel. The D.C. Circuit has never decided whether such a theory could succeed pursuant to Section 206. Even though the court in *DSMC Inc.* left the door open

---

[5] INVISTA NA argues that the reasoning of *DSMC Inc.* should bar the Court from binding Rhodia PI to the Confidentiality Agreement on a theory of equitable estoppel or assumption because Rhodia PI is not a signatory to that Agreement. Even if this Court accepted that argument, Rhodia PI would still be bound to the substance of the Confidentiality Agreement because the exchange of letters concerning Rhodia PI's obligation to arbitrate constitutes a written agreement which binds the parties to the Confidentiality Agreement, including the arbitration clause. *See* New York Convention Art. II (defining a written agreement as including an exchange of letters).

as to whether an effort to compel arbitration under the doctrine of equitable estoppel could ever succeed, 349 F.3d at 683, this Court does not find that Section 206 should be interpreted differently than Section 4. Like Section 4 of the FAA, Section 206, by implementing the New York Convention, requires a written agreement. *See* NY Convention, Article II(1) ("Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any difference which have arisen or which may arise between them in respect of a defined legal relationship . . . ."); Article II(2) ("The term 'agreement in writing' shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams."). Therefore, the Court finds that equitable estoppel is not a valid basis upon which a party may compel arbitration pursuant to Section 206 of the FAA.

Rhodia PI cannot compel INVISTA NA to arbitrate their dispute on a theory of equitable estoppel under either Section 4 or Section 206 of the FAA. The Court, however, found that Rhodia PI is bound by the Confidentiality Agreement under the doctrine of assumption. Accordingly, the Court must now determine whether INVISTA NA's claims are arbitrable, and if the claims are arbitrable, whether they fall within the scope of the parties' arbitration clause.

### C.    INVISTA NA's Claims Are Arbitrable

Upon a determination that a valid and enforceable arbitration agreement exists between the parties, the court must determine whether the claims raised in the complaint are arbitrable. *Stromberg*, 448 F. Supp. 2d at 68. INVISTA NA contends that its claims are not arbitrable for two reasons: (1) inventorship claims under 35 U.S.C. § 256 are not arbitrable under U.S. law;

and (2) the inventorship and state-law tort claims are beyond the scope of the arbitration

agreement.  For the reasons set forth below, the Court finds that inventorship claims are

arbitrable and that the claims in INVISTA NA's complaint are within the scope of the arbitration

agreement.

### 1.    Inventorship Claims Are Arbitrable

The issue of whether inventorship claims brought under 35 U.S.C. § 256 are arbitrable is

one of first impression in this Court.  INVISTA NA contends that inventorship claims are not

arbitrable for three reasons: (1) 35 U.S.C. § 294 ("Section 294") does not allow for the arbitration

of inventorship claims; (2) an arbitral tribunal cannot provide the appropriate relief to remedy an

inventorship claim; and (3) federal courts have a statutorily mandated role to adjudicate Section

256 claims.   The Court will address each argument in turn.

First, INVISTA NA contends that Section 294 does not provide for the arbitration of

Section 256 inventorship disputes.  Section 294 provides that parties may arbitrate disputes

relating "to patent validity or infringement" if they contract to do so.  35 U.S.C. § 294(a).

Because Section 294 does not mention that parties may arbitrate inventorship claims, INVISTA

NA argues that arbitration of such claims is prohibited.  "The great weight of authority,"

however, "favors the position that patent inventorship is an arbitrable issue in international

disputes." *Concat LP v. Unilever*, F. Supp. 2d 796, 809 (N.D. Cal. 2004).  Indeed, all courts

faced with this issue have held that such claims are arbitrable.  *See id.* at 809; *see also Affymax,*

*Inc. v. Johnson & Johnson*, 420 F. Supp. 2d 876-880-81 (N.D. Ill. 2006) (noting that correction

of the inventors listed on the patents was subject to arbitration); *Danisco A/S v. Novo Nordisk*

*A/S*, No. 01-CV-10557, 2003 WL 282391, at *3 (S.D.N.Y. Feb. 10, 2003) (explaining that

inventorship claims are arbitrable where the claims overlap with pending arbitration

proceedings); *Miner Enters v. Adidas AG*, No. 95-C-1872, 1995 WL 708570, at *3 (N.D. Ill.

Nov. 30, 1995) (stating that there is no authority to interpret Section 294 narrowly).

Furthermore, Congress has not expressly excluded Section 256 inventorship claims from

arbitration. Courts cannot recognize "subject-matter exceptions [to arbitrate] where Congress

has not expressly directed the courts to do so." *Mitsubishi Motors Corp. v. Soler Chrysler-

Plymouth, Inc.*, 473 U.S. 614, 639 n.21 (1985). In addition, the Supreme Court has stated that

domestic courts will often have "to subordinate domestic notions of arbitrability to the

international policy favoring commercial arbitration." *Id*. at 639. Thus, without express

direction from Congress prohibiting the arbitration of Section 256 inventorship disputes, the

federal presumption in favor of arbitration prevails. Accordingly, the Court finds that Section

294 does not prevent Section 256 inventorship disputes from arbitration.

Second, INVISTA NA asserts that its inventorship claim is not arbitrable because

arbitration cannot provide the appropriate remedy mandated in Section 256. A claim is arbitrable

so long as the statutory relief may be awarded in arbitration. *See Mitsubishi*, 473 U.S. at 637.

Here, arbitration can provide the appropriate relief provided in Section 256. To correct

inventorship of a patent, Section 256 provides that either the parties can petition the Director of

the Patent and Trademark Office to correct the error or a court may order the Director to correct

inventorship. *See* 35 U.S.C. § 256. An arbitral award is binding between the parties to the

arbitration. *See* 35 U.S.C. § 294. Thus, if an arbitral tribunal finds that the named inventors of a

patent should be corrected, the tribunal can order the parties to petition the Director to change

inventorship.  Furthermore, should the parties fail to petition the Director, a court can convert the tribunal's award into a judgment and order the Director to change the inventorship of the patent. Therefore, the Court finds that arbitration may provide the appropriate relief to resolve Section 256 inventorship claims.

Last, INVISTA NA contends that an agreement to arbitrate inventorship claims divests federal courts of their statutorily mandated role to adjudicate Section 256 claims.  The burden is on INVISTA NA "to show that Congress intended to preclude a waiver of judicial remedies" for Section 256 claims.  *Shearson/American Express., Inc. v. McMahaon*, 482 U.S. 220, 227 (1987). INVISTA NA may establish such intent in one of three ways:  through the plain language of Section 256; through the legislative history of Section 256; or through demonstrating an inherent conflict between arbitration and the purpose of the statute.  *Id.*  A Section 256 claim is arbitrable because the language of Section 256 does not grant federal courts the exclusive right to adjudicate inventorship claims.  *See* 35 U.S.C. § 256 (providing that inventorship may be corrected through a petition to the Director or a court order); *cf. Duke Power Co. v. FERC*, 864 F.2d 823, 829 (D.C. Cir. 1989) (explaining that arbitration was not appropriate where the applicable statute granted exclusive jurisdiction to the FERC as an administrative agency).  In addition, the legislative history of Section 256 does not demonstrate a Congressional intent to prevent an arbitral tribunal from resolving inventorship disputes.  *See generally*, H.R. Rep. No. 82-1923 (1952).  Moreover, as demonstrated above, there is no conflict between arbitrating inventorship claims and the purpose of Section 256.  An arbitral tribunal can provide the same remedy as provided in Section 256.  Therefore, arbitration of inventorship claims does not divest the courts of a statutorily mandated role to adjudicate inventorship claims.

14

In sum, Section 294 does not prohibit the arbitration of Section 256 claims.  In addition, an arbitral tribunal can provide the same relief as a federal court, and Section 256 does not grant exclusive jurisdiction over inventorship claims to federal courts.  Accordingly, the Court holds that inventorship claims brought under Section 256 are arbitrable.

### 2.    The Claims Are Within the Scope of the Arbitration Agreement

The only remaining question is whether INVISTA NA's inventorship and additional claims are within the scope of the arbitration agreement.  Article 5.1 of the parties' Confidentiality Agreement states that "[a]ny dispute arising out of this Agreement shall be settled by . . . arbitration."  (Def.'s Mot. to Compel Ex. 1 ¶ 5.1.)  INVISTA NA urges this Court to adopt a narrow interpretation of the phrase "arising out of."  This Circuit has not addressed whether such language should be interpreted narrowly or broadly.  Several circuits have held that "arising out of" language should be interpreted narrowly.  *See, e.g., Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994) (interpreting "arising out of" language narrowly); *Texaco, Inc. v. American Trading Transp. Co.*, 644 F.2d 1152, 1154 (5th Cir. 1981) (noting that "arising out of' should be interpreted narrowly).  Other circuits, however, have determined that "arising out of" language is entitled to a broad interpretation.  *See e.g., Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993) (finding that "arising out of" encompasses all disputes having their origin or genesis in the agreement); *cf. Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Co.*, 252 F.3d 218, 226 (2d Cir. 2001) (explaining that the precise language of "arising under" is needed to limit an arbitration agreement to the literal interpretation of the contract and that other language such as "arising from" does not limit an arbitration agreement to its literal interpretation).

15

In the only case addressing this issue in this district, the court in *Dowley v. Dewey Ballantine LLP.*, No. 05-662, 2006 WL 1102768 at *8 (D.D.C. Apr. 26, 2006), held that "arising out of" should be interpreted broadly. The *Dowley* court relied upon the strong presumption in favor of arbitration. *Id.*; *see also AT & T Techs.*, 475 U.S. at 648 (stating that "any doubt concerning the scope of arbitrable issues should be resolved in favor arbitration"); *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24-25 (declaring that doubts as to whether a dispute is within the scope of arbitration should be resolved in favor of arbitration). Moreover, the court reasoned the circuit precedent which interpreted "arising under" broadly allows for "arising out of" to be interpreted broadly as well. *See Dowley,* 2006 WL 1102768 at *9 ("[I]f 'arising under' constitutes a broad arbitration clause, 'arising out of' constitutes even a broader arbitration clause that covers all claims that are germane to the subject matter of the contract."). Accordingly, in light of the holding in *Dowley* and the federal policy in favor of arbitration, this Court holds that "arising out of" creates a broad arbitration agreement.

Having found that the parties' arbitration agreement is subject to broad interpretation, the Court must now decide whether INVISTA NA's claims fall within the scope of the arbitration agreement. To determine whether INVISTA NA's claims are within the scope of the arbitration agreement, the Court must focus on the factual allegations in the complaint instead of the legal causes of action asserted. *See Jung v. Ass'n of American Medical Colleges*, 300 F. Supp. 2d 119, 147 (D.D.C. 2004). Therefore, if INVISTA NA's factual allegations touch matters covered within the arbitration agreement, the dispute must be submitted to arbitration because the dispute is within the scope of the arbitration agreement. *Id.*

Here, either a  broad or narrow construction of the parties' arbitration agreement places

16

INVISTA NA's claims within the scope of the arbitration agreement because INVISTA NA's allegations touch matters covered within the arbitration agreement.  In its complaint, INVISTA NA alleges that Rhodia PI used information protected by the Confidentiality Agreement in its patents.  Article 3.2 of the Confidentiality Agreement explicitly prohibits Rhodia PI from using the protected confidential information for its own research and benefit or from including any confidential information in patent applications.  (Def.'s Mot. to Compel Ex. 1 ¶ 3.2.)  Thus, a dispute over whether Rhodia PI breached Article 3.2 of the Confidentiality Agreement clearly arises out of the Confidentiality Agreement and is within the scope of the arbitration clause of the Confidentiality Agreement.  Accordingly, the Court finds that INVISTA NA must pursue its inventorship and state law claims in the pending arbitration proceedings.

### D.    The Request to Stay the Proceedings Is Denied

Having granted Rhodia PI's motion to compel arbitration, this Court must address INVISTA NA's request to stay, rather than dismiss, the proceedings in this matter pursuant to Section 3 of the FAA until the arbitral tribunal renders a decision.[6]  *See* 9 U.S.C. § 3.  Section 3 explicitly provides that a stay is not available to the party in default in proceeding with arbitration.  *Id.*  Here, INVISTA NA is in default in proceeding with arbitration because

---

[6] Section 3 of the FAA states:
If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.
9 U.S.C. § 3.

17

INVISTA NA refused to arbitrate the claims in its complaint. As demonstrated above, INVISTA NA's claims in this complaint are arbitrable. The Court therefore has no reason to retain jurisdiction over this action. Accordingly, the Court denies INVISTA NA's request to stay this action.

## V.    CONCLUSION

For the foregoing reasons, the Court finds that a valid and enforceable arbitration agreement exists between INVISTA NA and Rhodianyl, and that Rhodia PI is bound to that agreement under the doctrine of assumption. In addition, the Court finds that all of INVISTA NA's claims arise out of the Confidentiality Agreement and are therefore arbitrable. Accordingly, the Court GRANTS Rhodia PI's motion [8] to compel arbitration and DENIES INVISTA NA's motion [13] for an oral argument to determine whether arbitration should be compelled. Furthermore, the Court DENIES INVISTA NA's motion [13] to stay these proceedings and its claims are DISMISSED WITH PREJUDICE. The parties are ORDERED to arbitrate all claims asserted in INVISTA NA's complaint. A separate Order shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, August 6, 2007.